```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/14/2025
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
PRINCESA ORTEGA and NATHALIA GARCIA,

                          Plaintiff,

        -against-

ZONI LANGUAGE CENTERS, INC., ZONI LANGUAGE
CENTERS-FLUSHING, LLC, and JULIO NIETO,

                          Defendants,
-----------------------------------------------------------------X

24-CV-8223 (DEH) (KHP)

**OPINION ON MOTION FOR**
**CONDITIONAL CERTIFICATION**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      Plaintiffs Princesa Ortega and Nathalia Garcia worked as student services representatives for Zoni Language Centers, Inc. ("Zoni"). They bring claims on behalf of themselves and a putative class and collective under Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York and New Jersey state wage laws asserting that Defendants failed to pay them the appropriate minimum wage and overtime rates for their work and failed to pay them certain commissions they were due, among other claims. They now move pursuant to 29 U.S.C. § 216(b) for an order "conditionally certifying" this case as an FLSA collective action and authorizing notice to be sent to potential opt-in plaintiffs. (ECF No. 48).

      For the reasons set forth below, the motion to conditionally certify a collective is GRANTED.[1]

---

[1] This Court granted Plaintiffs' motion to amend their complaint to add an individual defendant Zoilo Nieto, Zoni Language Centers, Inc. NJ, and Zoni New Jersey Institute as parties. (ECF No. 50). However, objections to that opinion are pending before the District Judge. (ECF No. 53). The pendency of the objections to that opinion does not impact this Court's decision on the motion for conditional certification.

1

**BACKGROUND**[2]

Defendant Zoni Language Centers, Inc. ("Zoni") is a New York Corporation that operates language schools in New York, New Jersey and Florida, primarily for adults desiring to learn English as a second language. (ECF No. 45-2, at ¶ 12).  Each school is separately incorporated and a subsidiary of Zoni.  (*Id.*, at ¶¶ 13-16).  For example, Zoni Language Centers-Flushing, LLC does business as Zoni Language Centers but is a subsidiary of Zoni.  (*Id.*, at ¶ 13).  Similarly, Zoni Language Centers Inc. NJ and Zoni New Jersey Institute LLC are New York corporations doing business as Zoni Language Centers and are subsidiaries of Zoni. (*Id.*, at ¶¶ 14-15).  There are thirteen locations in total, seven in New York, five in New Jersey and one in Florida.  (ECF No. 48-1, at 2).  Julio Nieto is the Vice President of all the individual schools and sets policies for all the schools, subject to approval of Zoni president, Zoilo Nieto.  Zoilo Nieto also must approve pay practices and hiring.  (ECF No. 45-2, at ¶ 17)

Plaintiff Princesa Ortega worked as a customer services representative/student services representative for Zoni at various campuses/school locations including at two locations in Queens, two locations in New Jersey, and a location in Manhattan. (Ortega Aff., at ¶¶ 3-4).  She was employed between March 2019 and November 2023 (*Id.*, at ¶ 3), although she started as a student services representative in April 2019 (after first working at a restaurant at the school). (*Id.*, at ¶¶ 8-10).  Her paychecks were issued from different Zoni campuses during her employment, and for some periods she was issued separate W2s. (*Id.*, at ¶ 14).  She received an hourly wage but was not paid any additional amounts for hours worked over 40 in a work

---

[2] The background facts are taken from the pleadings and the declarations of Plaintiffs Ortega ("Ortega Aff.") and Garcia ("Garcia Aff.").  The Court does not consider the declaration of Fabian Gavilanes because it is unsigned.

2

week. (*Id.*, at ¶¶ 17-18). She estimates she worked between fifty and sixty hours each week. (*Id.*, at ¶ 16). She was paid $15 per hour for her first forty hours worked and paid nothing for hours worked above forty in a week in the period of April 2019 to December 2022. (*Id.*, at ¶ 18). She was paid $17 per hour for her first forty hours worked and paid nothing for hours worked above forty in a week in the period of January 2023 to November 2023. (*Id.*, at ¶ 20). Additionally, she allegedly was promised, but never paid, a sales commission, which she understood was supposed to be an additional $5 for every registration above her goal. (Ortega Aff. ¶¶ 10-11, 13-14, 16, 18-20, 32, 42).

Plaintiff Ortega provides details about how she recorded her hours. Starting in 2020, on a daily basis, she reported her hours to a manager named Liliana Munoz by email and in a later period she reported hours to Defendant Munoz. (*Id.*, at ¶ 33). Those emails reflect she worked 3-4 hours in excess of her regularly scheduled hours each day. (*Id.*, at ¶¶ 33, 38). Starting in May 2023, Ortega was assigned to work 20 hours per week in Flushing and 20 hours per week in West New York and paid only for 20 hours of work at each location even when her hours exceeded 20 (or 40 in total for the week). (*Id.*, at ¶¶ 34-35). Starting in May 2023, she was required to use a time clock to punch her hours; however, her managers told her not to punch her hours if it appeared she would exceed 40 hours in a work week. (*Id.*, at ¶¶ 36-37).

Plaintiff Nathalia Garcia worked as a customer sales representative/student services representative from April 2021 to November 2022 at two locations in Queens. (Garcia Aff., at ¶ 3). Like Ortega, she received an hourly wage but was not paid any additional amounts for hours worked over 40 in a work week. (*Id.*, at ¶ 15). She attests she worked fifty to fifty-five hours per week. (*Id.*, at ¶ 10). Garcia was initially paid $15 per hour for the first forty hours worked

and was supposed to receive a commission. (*Id.*, at ¶ 20). She was paid nothing for hours worked above forty in a work week and never paid her commission. (*Id.*, at ¶¶ 19-21). Garcia attests that her manager, Mercedes Taveras, instructed her to punch in to work at 7:00 a.m. and punch out at 3:30 p.m. even thought she was required to work until 5:00 p.m. and as late as 8 p.m. on some days. (*Id.*, at ¶ 14). Garcia states that her manager would alter her timesheets and in fact witnessed her using whiteout to change the hours. (*Id.*, at ¶ 15). The explanation her manager provided was that "Zoni did not pay overtime." (*Id.*, at ¶ 16) Defendants did not provide Garcia with an accurate wage statement setting forth deductions, taxes, rate of pay or hours worked. (Garcia Aff., at ¶ 21)

Plaintiff Ortega attests that she spoke with coworkers who informed her they too were not paid overtime for hours worked above forty in a workweek. (Ortega Aff., at ¶¶ 26-29) Defendants did not provide Ortega with an accurate wage statement setting forth deductions, taxes, rate of pay or hours worked. (*Id.*, at ¶¶ 17, 19).

Plaintiffs estimate that there are at least seventy hourly employees working at the various Zoni Language Center campuses throughout New York and New Jersey based on the fact there were approximately twelve non-managerial employees in the offices in which Plaintiff Garcia worked. (Garcia Aff., at ¶¶ 8-9). Plaintiffs contend that they were required to meet certain performance goals that could not be met within just forty hours and state they believe others had similar performance goals (i.e., signing up additional students for the school) that could not be met with just forty hours in a week. (Ortega Aff., at ¶¶ 21-23, 29-31). If quotas were not met, Plaintiff faced termination of her employment. (*Id.*, at ¶ 25). Plaintiffs also contend that management never approved overtime and had a policy of not paying for

overtime, which they understood applied to all hourly employees. (*Id.*, at ¶¶ 39-40, 43, 46-59; Garcia Aff., at ¶¶ 15-18). In fact, Plaintiff Ortega attests that Defendant J. Nieto expressly told her that if she needed to work in excess of 40 hours per week to meet quotas she would not be compensated. (Ortega Aff., at ¶¶ 39-40). Other managers also said the same to her. (*Id.*, at ¶ 43). Other student services representatives also experienced similar practices. For example, student services representative Mario Savedra told Plaintiff Ortega that he came into work on Saturdays to meet his quota and keep his job and that he was not paid for working on Saturdays. He also reported that he was quitting work because he was not paid his commission as promised. (*Id.*, at ¶ 46). Student services representatives Fabian Gavilanes and Vitelvina Romero reported similar experiences. (*Id.*, at ¶¶ 47-49).

Plaintiffs allege all of the school locations and campus operated as a single business. (ECF No. 45-2, at ¶ 16). Although each location had a "campus manager" in charge of payroll, managers from other campus/school locations did, at times, request that employees be transferred to cover an absent worker. (*Id.*, at ¶ 20). Thus, someone employed at one campus location might work sometimes at another campus location. (*Id.*). Also, Plaintiffs allege that all Zoni campuses are subject to the same pay and working conditions. (Ortega Aff., at ¶¶ 26-27, 51). Plaintiff Ortega states that while she applied in Newark, New Jersey, she was hired to work in other locations. (*Id.*, at ¶¶ 7, 10-12). In their reply, Plaintiffs attached information provided in discovery (after the submission of their moving brief). Specifically, a Zoni job interview form for student services representatives that applies to Zoni locations in New York, New Jersey and Florida. (ECF No. 61-3). Defendants have failed to produce other classwide discovery as ordered by this Court in advance of this motion. But, based on the allegations in the pleadings,

the declarations of the Plaintiffs and the uniform Human Resources form, the fact that employees worked at multiple locations or were assigned to fill in at other locations, and that Julio Nieto had a say over pay practices at multiple locations, the Court can infer that there were common employment practices across all locations.

## **LEGAL STANDARD**

The FLSA allows employees to maintain an action to recover unpaid wages collectively where the employees are "similarly situated" and file consent in writing to opt into the action. 29 U.S.C. § 216(b). District courts have "discretion [ ] to implement Section 216(b) … by facilitating notice to potential plaintiffs" of the existence of the action and their opportunity to opt in. *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).  The Court of Appeals for the Second Circuit has endorsed a two-step method to certify an opt-in FLSA collective action. (*Id.*, at 554-55*).*  At step one, the subject of the current motion, the district court asks whether it is appropriate to send notice to potential opt-in plaintiffs "who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred," thus issuing a "conditional certification" of the collective action. *Id. at 555*; see *Schwerdtfeger v. Demarchelier Mgmt., Inc.*, No. 10-cv-7557, 2011 WL 2207517, at *3 (S.D.N.Y. June 6, 2011) ("Orders authorizing notice are often referred to as orders 'certifying' a collective action, even though the FLSA does not contain a certification requirement.").

At this first stage, plaintiffs need only make a "modest factual showing" that they and potential opt-in plaintiffs 'together[,] were victims of a common policy or plan that violated the law.'" *See Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261

(S.D.N.Y. 1997) (Sotomayor, J.)). Though the "modest factual showing" cannot be satisfied by "unsupported assertions," this is a low burden. *Id.* (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir.1991)). A showing that plaintiffs "were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class" is generally a sufficient basis from which to infer a "common policy" required for conditional certification at this stage. *Cortes v. New Creators, Inc.*, No. 15-cv-5680 (PAE), 2015 WL 7076009, at *3, 2015 U.S. Dist. LEXIS 153730, at *9 (S.D.N.Y. Nov. 12, 2015) (citing *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007)). Documents properly considered in this inquiry include a plaintiff's own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members. *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557-58 (S.D.N.Y. 2013). In an appropriate case, conditional collective certification may be based solely on the personal observations of one plaintiff. *See Hernandez v. Bare Burger Dio Inc.*, No. 12-cv-7794 (RWS), 2013 WL 3199292, at *6 (S.D.N.Y. June 18, 2013) (granting conditional collective action certification of all tipped employees at a single Bareburger location based on one employee's declaration). The inquiry is not a merits one; and the court may not "resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations." *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016) (quoting *In re Penthouse Exec. Club Comp. Litig.*, No. 10–CV–1145 (NRB), 2010 WL 4340255, at *2 (S.D.N.Y. Oct. 27, 2010)).

If the Court finds that the potential plaintiffs appear to be similarly situated, it will issue notice and permit the case to proceed through discovery as a collective action. *See, e.g., id*;

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007). However, conditional certification is not mandatory and lies within the discretion of the Court. *See*, *e.g.*, *Schucker v. Flowers Foods*, Inc., No. 16-CV-3439 (KMK), 2017 WL 3668847, at *5 (S.D.N.Y. Aug. 24, 2017) ("[C]onditional certification is discretionary and managerial in nature.") (citation and internal quotation marks omitted); *Auffray v. FXFL, LLC*, No. 1:15-CV-9379-GHW, 2016 WL 6810863, at *2 (S.D.N.Y. Nov. 16, 2016) ("[T]he decision whether to a grant a motion for conditional certification of an FLSA collective action lies within the discretion of the district court. . . . [C]onditional certification . . . is not mandatory, even where named plaintiffs are able to show that they are similarly situated to potential opt-in plaintiffs.").

**DISCUSSION**

1. *Conditional Certification*

Plaintiffs have satisfied the low burden for securing "conditional certification" for other student sales representatives. That is, there is sufficient factual information provided to send notice to other student sales representatives throughout all Zoni locations to alert them to this action and give them an opportunity to opt-in and assert a claim under the FLSA. In particular, they themselves worked as student sales representatives at multiple locations in New York and New Jersey and attested to experiencing similar pay and overtime practices and work conditions at all locations. Moreover, they have attested to having communications with other student sales representatives who reported similar experiences of not being paid for overtime or their commissions. The sworn affidavits from Plaintiffs attesting that they and their fellow student sales representatives were subject to a common policy of being required to work more

than regularly scheduled hours without pay is sufficient to satisfy the modest burden for conditional certification. *See*, *e.g.*, *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-cv- 2625 (RJS), 2015 WL 4240985, at *4 (S.D.N.Y. July 13, 2015) (granting conditional certification on a single affidavit); *Bare Burger*, 2013 WL 3199292, at *3-4 (granting conditional certification and collecting cases); *Lianhua Weng v. Kung Fu Little Steamed Buns Ramen Inc.*, No. 17 CIV. 273 (LAP), 2018 WL 1737726, at *3 (S.D.N.Y. Mar. 26, 2018) (certifying collective where named delivery person plaintiffs worked 57-69 hours per week and stated information from which the court could "infer that other deliverymen worked similar shifts for comparable pay.") (citation omitted)).  It is appropriate to include all locations because of Plaintiffs' allegations that all Zoni entities are part of a single integrated enterprise and have common management and policies, their own declarations that they were transferred or assigned to work at other locations to fill in as needed, their production of a Human Resources form that suggests common personnel policies, and alleged statements from and responsibilities of Julio Nieto, who was involved in management at various locations and responsible for human resources and pay policies.

 It is not appropriate at this point to include hourly workers in other positions in any notice of this action.  The only other position that is mentioned in Plaintiffs' declarations with any detail is the position of bursar.  Ortega attests she had a conversation with a bursar in Manhattan who said she often worked beyond her scheduled hours and was never given additional overtime.  But is it not clear when the conversation took place, how the bursar's job compared to that of student services representatives, what the bursar's rate of pay was or regularly scheduled hours were, or whether the bursar actually worked more than forty hours per week. (Ortega Aff., at ¶ 50).  Similarly, Garcia attests only that she once saw a bursar in the

9

Jackson Heights location clock out and continue working, and that the bursar stated she was required to work more hours than Zoni would pay her. (Garcia Aff., at ¶¶ 25-26). In contrast, Plaintiffs have provided far more detail about the position of student services representative, indicating that the position regularly required working more than 40 hours each week, why it required the additional time (to meet sales quotas), and that the rate of pay was ($15 per hour or $17 per hour for the first 40 hours and $0 for hours worked above 40 in a week). *See Zeledon*, 2016 WL 6561404, at *11–12 (declining to certify where, *inter alia*, plaintiffs failed to define other employees' schedule or pay information); *Sanchez v. JMP Ventures, L.L.C.*, No. 13 CIV. 7264 KBF, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (finding that information about "where or when these observations or conversations occurred . . . is critical in order for the Court to determine the appropriate scope of the proposed class and notice process"); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 665 (S.D.N.Y. 2013) (finding statements in a declaration were "conclusory where they fail to identify particular employees or make specific allegations.") (internal quotation marks omitted).

The Court makes no finding on the merits at this point, and conditional certification does not mean that a collective action is ultimately appropriate – that will be decided at a later stage. However, notice to other student sales representatives will assist in fleshing out whether there are other aggrieved student services representatives (as Plaintiffs attest) and provide more information to assess the merits of this action proceeding as a collective.

Defendants argue that Plaintiff Ortega is not similarly situated to other student service representatives because she was an F-1 visa holder and for that reason conditional certification should not be granted. They provide no support for this argument and, in any event, Ortega's

immigration status is irrelevant to the issue of whether student services representatives were not paid for working more than 40 hours in a week. *See Murudumbay v. 29 St. Stone, Inc.*, 2025 WL 2589200, at *2 (S.D.N.Y. Sep. 8, 2025) (quoting *Keawsri v. Ramen-Ya Inc.*, 2022 WL 2162981, at *4 (S.D.N.Y. May 5, 2022)) ("[C]ourts have long held, that inquiry into a plaintiffs' immigration status is generally 'irrelevant and impermissible' in a FLSA case.") (collecting cases).

Defendants' argument that Plaintiffs' allegations are insufficient to conditionally certify a collective in locations other than where Plaintiffs have worked also is unpersuasive, and the cases they rely on distinguishable. In *Monger v. Cactus Salon & Spa's LLC,* 2009 U.S. Dist. LEXIS 60066 at *5 (E.D.N.Y. 2009), the plaintiffs merely asserted a "belief" that all hair stylists and shampoo assistants were subject to the same policies, without identifying similarly situated employees at other locations, offering documentary evidence, or alleging a shared workforce. In contrast, Plaintiffs here identify specific individuals at multiple locations and provide evidence of common management and practices across all identified Zoni campuses. Similarly, in *Morales v. Plantworks, Inc.*, 2006 U.S. Dist. LEXIS 4267, (S.D.N.Y. Feb. 1, 2006), the plaintiffs' affidavits referred only to their own experiences, lacking any evidence about other employees. In contrast, the affidavits here reference direct observations, conversations, and complaints involving employees at multiple locations. Finally, in *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346 (E.D.N.Y. 2008), conditional certification was denied as to additional Domino's locations because plaintiffs propounded limited evidence, relevant only to one Domino's location. *Id.*, at 353. In contrast, here, Plaintiffs present direct evidence of an integrated management structure and uniform policy practices across multiple Zoni locations. The Court

11

also notes that Defendants base some of their arguments on factual assertions for which they provide no support in terms of affidavits or documents.

2. *Notice and Opt-In Period and Class List*

Plaintiffs propose a form of notice and opt-in form in both English and Spanish, but they do not provide a certified translation of the forms as is needed to ensure that it is consistent with the English form. Defendants have not commented on the forms which need to be revised in any event based on the Court's ruling today. Thus, the parties shall meet and confer on a form of notice and opt-in document, and submit them to the Court for approval together with certified Spanish translations of the forms, within 14 days of this Opinion and Order.

Plaintiffs seek to circulate the notice by email, text message, mail and posting, and therefore seek a list of similarly situated employees with their last known address, email and phone number for the three-year period preceding the filing of this action. They also seek alternative addresses known by Defendants, social security numbers and dates of employment. Courts in this District routinely allow plaintiffs to receive contact information for potential opt-in plaintiffs, including last known addresses, telephone numbers, and emails. *See, e.g.*, *Martin v. Sprint/United Mgmt. Co.*, No. 15-cv-5237 (PAE), 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016). However, Plaintiffs provide no reason for obtaining social security numbers at this point in the case. Accordingly, within two weeks of the date of this Opinion and Order, Defendants shall produce to Plaintiffs a list of all student services representatives employed by all Zoni locations in New York, New Jersey and Florida for the period starting three-years prior to the filing of this action (i.e., October 29, 2021) to the date of this Opinion and Order.

**CONCLUSION**

For the reasons set forth above, the motion is granted in part and denied in part. A collective action is conditionally certified consisting of all student services representatives employed at all Zoni locations for the period commencing October 29, 2021 through the date of this Opinion and Order. The parties shall meet and confer on notice and opt-in forms and submit revised forms to the Court for its approval within 14 days of this Opinion and Order.

Dated: October 14, 2025
      New York, New York

_____
Katharine H. Parker
U.S. Magistrate Judge